**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Kroll Ontrack, Inc.,

    Plaintiff,

              Civ. No. 09-3595 (RHK/JJK)
              **MEMORANDUM OPINION
              AND ORDER**

v.

Jacobowitz and Gubits, LLP,

    Defendant.

---

Bridget A. Sullivan, Gurstel, Staloch & Chargo, PA, Golden Valley, Minnesota, for Plaintiff.

James R. Crassweller, Kalina Wills Gisvold & Clark, PLLP, Minneapolis, Minnesota, for Defendant.

---

## INTRODUCTION

In this breach-of-contract action, Kroll OnTrack, Inc. ("Kroll"), a Minnesota corporation, has sued Jacobowitz and Gubits, LLP ("Jacobowitz"), a New York law firm. Jacobowitz now moves to dismiss Kroll's Complaint for lack of personal jurisdiction, or in the alternative, to transfer venue to the United States District Court for the Southern District of New York. For the reasons set forth below, the Court will deny the Motion.

## BACKGROUND

The following facts are not in dispute. Kroll is a Minnesota corporation providing data recovery, electronic discovery, and computer forensic services. Kroll's corporate

headquarters are located in Eden Prairie, Minnesota, but Kroll also operates offices and service labs in several states across the country, including New York.[1]

Jacobowitz is a law firm with its primary place of business in Walden, New York. Jacobowitz has no attorneys licensed to practice law in Minnesota, has never maintained an office in Minnesota, has never sent an attorney to Minnesota for any business purpose, and does not solicit clients in Minnesota. Moreover, Jacobowitz has no real property or holdings in Minnesota, and does not maintain an agent for service of process in Minnesota.

In 2008, Jacobowitz contacted Kroll over the telephone to retain its electronic data recovery and processing services for a particular lawsuit. Howard Protter, the managing partner of Jacobowitz, spoke with Kroll employees located in its Eden Prairie office.[2] The parties discussed the recovery of data from five computer hard drives and it was determined that the work would be accomplished in three phases: (1) on-site data recovery; (2) forensic imaging of hard drives; and (3) forensic data recovery. The on-site data recovery was to be done in New York, and the forensic imaging and recovery were to take place on Kroll's secured servers, which are located in Eden Prairie, Minnesota.

Kroll's standard contract, entitled "Statement of Work" ("SOW"), was faxed to Protter, who signed and returned the document. The SOW lists Kroll employees in

---

[1] During oral argument, counsel for Jacobowitz asserted repeatedly that Kroll advertises worldwide. However, such advertising has not been placed in the record. See Wittenburg v. Am. Exp. Fin. Advisors, Inc., 464 F.3d 831, 838 (8th Cir. 2006) ("[A]rguments of counsel are not evidence.").

[2] Protter contends that he called Kroll's New York office and did not know that he was speaking to a Kroll employee located in Minnesota. (Protter Aff. ¶¶ 3-4.)

Minnesota as Jacobowitz's service contacts and each page of the SOW provides Kroll's Eden Prairie address. The SOW contains a Minnesota choice-of-law clause[3] and provides that the place of the adoption of the agreement is Eden Prairie, Minnesota. In addition, the SOW contains a permissive Minnesota venue clause.[4]

Once the SOW was executed, Kroll employees visited Middletown, New York, to perform the data recovery. While on site, Jacobowitz's clients requested that Kroll perform additional services. Kroll agreed to undertake this additional work, which was performed in Eden Prairie. The SOW was amended accordingly and signed by Protter.

Jacobowitz contends that Kroll breached its contractual duties by failing to produce the electronic data "in a manner that would meet both the electronic discovery protocol and the discovery deadline" in the underlying litigation. (Mem. in Supp. at 4.) Kroll charged $101,501.05 for its services, which Jacobowitz has not paid. Kroll filed the instant action in December 2009 alleging three claims: services rendered (Count I); breach of contract (Count II); and account stated (Count III). Jacobowitz now moves to dismiss for lack of personal jurisdiction, or in the alternative, to transfer to the United States District Court for the Southern District of New York.

---

[3] This clause provides: "The parties agree that this Agreement shall be construed and the relations of the parties shall be determined in accordance with the laws of the state of Minnesota." (Schultz Aff. Ex. A.)

[4] This clause provides: "a proper venue for any legal proceedings shall be HENNEPIN COUNTY DISTRICT COURT; MINNEAPOLIS, MINNESOTA." (Schultz Aff. Ex. A.)

ANALYSIS

I.    **Personal jurisdiction**

   A.    **Standard of review**

   To survive Jacobowitz's Motion to Dismiss, Kroll need only make a *prima-facie* showing that personal jurisdiction over Jacobowitz exists in Minnesota. Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 561 (8th Cir. 2003) (citing Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd., 89 F.3d 519, 522 (8th Cir. 1996)). In determining whether Kroll has made such a showing, the Court must view the evidence in the light most favorable to Kroll. Id.[5]

   B.    **Analysis**

   Jurisdiction over Jacobowitz must satisfy both the Due Process Clause of the Fourteenth Amendment and the requirements of Minnesota's long-arm statute. Pecoraro, 340 F.3d at 561. However, because Minnesota's long-arm statute extends jurisdiction to the farthest reaches of the Due Process Clause, Soo Line R.R. Co. v. Hawker Siddeley Can., Inc., 950 F.2d 526, 528 (8th Cir. 1991), the Court's inquiry "collapses into the single question of whether [the] exercise of personal jurisdiction comports with due process." Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994).

   In the personal-jurisdiction context, due process is satisfied only where a non-resident defendant has sufficient "minimum contacts" with the forum state "such that

---

[5] When deciding whether personal jurisdiction exists, the Court must view the evidence in the light most favorable to the plaintiff only where, as here, it has not held an evidentiary hearing and has instead relied on the pleadings and affidavits. Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991).

summoning the defendant would not offend traditional notions of fair play and substantial justice." Pecoraro, 340 F.3d at 561 (internal quotation marks and citations omitted). "The central question is whether [the] defendant has purposefully availed itself of the privilege of conducting activities in the forum state and should, therefore, reasonably anticipate being haled into court there." Id. at 562 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) and World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). To answer that "central question" here, the Court must examine five factors: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. Pecoraro, 340 F.3d at 562 (citation omitted). The first three factors are of primary importance, while the last two are of secondary importance. Id. In assessing these factors, the Court must be mindful that "the central concern of the inquiry . . . is the relationship among the defendant, the forum, and the litigation." Land-O-Nod Co. v. Bassett Furniture Indus., Inc., 708 F.2d 1338, 1340 (8th Cir. 1983) (internal quotation marks and citations omitted).[6]

---

[6] There are two forms of personal jurisdiction -- specific and general. Digi-Tel, 89 F.3d at 522 n.4. "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state." Id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 nn.8 & 9 (1984)). "General jurisdiction refers to the power of [the forum] state to adjudicate any cause of action involving a particular defendant regardless of where the cause of action arose," id., and exists only if the defendant maintains "continuous and systematic" contacts with the forum state, Morris v. Barkbuster, Inc., 923 F.2d 1277, 1281 (8th Cir. 1991) (quoting Helicopteros, 466 U.S. at 416, 418-19). Here, Kroll asserts that the "Court has specific jurisdiction over [Jacobowitz] based upon the parties' contract and business

### 1. **Primary factors**

The first three factors discussed in <u>Pecoraro</u>, 340 F.3d at 562, concerning the quality, nature, and quantity of contacts with the forum, are closely related and therefore are considered together. <u>Digi-Tel</u>, 89 F.3d at 523. To support the exercise of personal jurisdiction in this case, Kroll describes several contacts between Jacobowitz and Minnesota: <u>First</u>, Jacobowitz deliberately reached out to Minnesota by contacting Kroll, a Minnesota corporation, seeking services; <u>second</u>, Jacobowitz knowingly entered into a contract with a Minnesota corporation by executing the SOW in Minnesota, a contract containing a Minnesota choice-of-law clause and a Minnesota permissive venue clause; <u>third</u>, Jacobowitz had numerous contacts with Minnesota through telephone, e-mail, and facsimile communications with Kroll; and <u>finally</u>, a substantial portion of the work performed under the SOW was performed by Kroll in Minnesota.

The Court finds that the above-referenced contacts, all related to the present lawsuit, are sufficient to confer jurisdiction in this case. See <u>Schoemann *ex rel.* Schoemann v. Excellus Health Plan, Inc.</u>, 447 F. Supp. 2d 1000, 1004 (D. Minn. 2006) (Schiltz, J.) (citing <u>Morris v. Barkbuster, Inc.</u>, 923 F.2d 1277, 1280 (8th Cir. 1991) ("[S]pecific jurisdiction usually exists when a plaintiff's claims arise out of or are closely connected to" its contacts with the forum state). Most significantly, Jacobowitz entered into a contract with a Minnesota corporation that was executed in Minnesota. Once the contract was made, the services provided for under the SOW were then performed in

---

transactions in Minnesota." (Mem. in Resp. at 1.) Accordingly, the Court need not address whether the Court has general jurisdiction over Jacobowitz.

substantial part in Minnesota. These facts indicate that Jacobowitz purposely availed itself of the benefits of doing business in Minnesota. See Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1433-34 (8th Cir. 1995) (finding personal jurisdiction when defendant entered into a contract with a forum resident and the contract was performed in substantial part in the forum).

Jacobowitz asserts that it was unaware that the contract would be performed in Minnesota, as Kroll has a New York office. However, Jacobowitz was aware that Kroll was a Minnesota corporation. The contract documents do not indicate the involvement of any other Kroll office other than that located in Minnesota. In fact, each page of the SOW provides Kroll's Eden Prairie address. In addition, the SOW lists Kroll employees located in Minnesota as Jacobowitz's service contacts. Accordingly, it was unreasonable for Jacobowitz to assume that Kroll would not perform any of the services described in the SOW in Minnesota.

Furthermore, several additional facts support the Court's exercise of jurisdiction here. For example, the SOW has a Minnesota choice-of-law provision. See Bell Paper Box, Inc. v. Trans W. Polymers, Inc., 53 F.3d 920, 923 (8th Cir. 1995) (choice-of-law provisions are "relevant to the jurisdictional question").[7] In addition, Jacobowitz had numerous e-mail, telephone, and facsimile contacts with Minnesota in connection with Kroll's services. See Greenbelt Res. Corp. v. Redwood Consultants, LLC, 627 F. Supp.

---

[7] Jacobowitz did not negotiate this choice-of-law provision because the SOW is a standardized form contract utilized by Kroll. Nevertheless, as a sophisticated law firm, Jacobowitz was fully aware of the import of such a clause when it willingly signed the SOW. Moreover, there is no evidence that Kroll would not have been open to negotiate the choice-of-law clause.

2d 1018, 1026 (D. Minn. 2008) (Frank, J.) ("Letters, e-mails, faxes and telephone contacts may, in conjunction with other contacts, support the exercise of personal jurisdiction."). Accordingly, when all of Jacobowitz's contacts with Minnesota are considered in their totality, it becomes clear that personal jurisdiction exists in Minnesota. See Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc., 111 F.3d 1386, 1390 (8th Cir. 1997) (personal jurisdiction is determined based upon "defendant's contacts with the forum in the aggregate, not individually") (internal quotation marks and citation omitted).[8]

### 2. Secondary factors

In addition to the nature, quality, and quantity of contacts with the forum, the Court must also consider the "secondary" factors of Minnesota's interest in providing a forum for its residents and the convenience of the parties. Pecoraro, 340 F.3d at 562 (citation omitted). In addressing the first factor, "Minnesota has an undeniable interest in providing its residents with a forum." Aero Sys. Eng'g, Inc. v. Opron, Inc., 21 F. Supp. 2d 990, 998 (D. Minn. 1998) (Tunheim, J.) (citation omitted).

Regarding the second factor, the Court finds that Jacobowitz will not be substantially burdened in defending the underlying action in Minnesota. Moreover, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on

---

[8] While no Jacobowitz representative has ever traveled to Minnesota, a defendant need not have *physical* contact with the forum for personal jurisdiction to be appropriate. Bell Paper, 22 F.3d at 820. In fact, a "single contact with the forum state" can be sufficient to exercise personal jurisdiction over a defendant if that contact was deliberate and related to the lawsuit at bar. Pope v. Elabo GmbH, 588 F. Supp. 2d 1008, 1021 (D. Minn. 2008) (Schiltz, J.).

the alien defendant." Asahi Metal Indus. Co. v. Superior Ct. of Ca., Solano County, 480 U.S. 102, 114 (1987). Accordingly, the Court finds that the exercise of personal jurisdiction over Jacobowitz is appropriate here.[9]

## II. Venue

Jacobowitz asserts that even if personal jurisdiction exists, the Court should nevertheless transfer this action to the United States District Court for the Southern District of New York, as it is the more appropriate venue. The Court does not agree.

### A. Standard of review

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A court faced with a motion to transfer, therefore, must undertake a two-part inquiry. "The initial question . . . is whether the action might have been brought in the proposed transferee district. If so, the Court must [then] consider the convenience and interest of justice factors." Totilo v. Herbert, 538 F. Supp. 2d 638, 639-40 (S.D.N.Y. 2008).

As the text of Section 1404(a) makes clear, three general factors inform whether a district court should grant a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. See also Terra Int'l., Inc. v.

---

[9] Jacobowitz relies upon Kroll Ontrack, Inc. v. Grain, Civ. No. 08-1779, 2008 WL 4561637 (D. Minn. Oct. 10, 2008) (Frank, J.), to support its contention that the Court cannot exercise personal jurisdiction here. While Grain presents a similar factual scenario and an identical plaintiff, this case is nevertheless distinguishable. In Grain, the defendants, Michigan residents, had not themselves entered into a contract with Kroll, and in fact, had no contact with it whatsoever. Id. at *5. Here, Jacobowitz sought out the services of Kroll, entered into a contract with it, and had numerous communications with its Minnesota employees.

Miss. Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997). A district court may also consider any other factor it finds relevant when deciding whether transfer is warranted. Id. There is no precise mathematical formula to be employed when balancing these factors. Ford Motor Co. v. Ryan, 182 F.2d 329, 331-32 (2d Cir. 1950). Hence, a district court enjoys "much discretion" when deciding whether to grant a motion to transfer. Terra Int'l, 119 F.3d at 697.

Courts must be cognizant, however, that transfer motions "should not be freely granted." In re Nine Mile Ltd., 692 F.2d 56, 61 (8th Cir. 1982) (abrogated on other grounds by Mo. Hous. Dev. Comm'n v. Brice, 919 F.2d 1306 (8th Cir. 1990)). A "heavy" burden rests with the movant to demonstrate why a case should be transferred. E.g., Integrated Molding Concepts, Inc. v. Stopol Auctions L.L.C., Civ. No. 06-5015, 2007 WL 2263927, at *5 (D. Minn. Aug. 6, 2007) (Schiltz, J., adopting Report & Recommendation of Erickson, M.J.); Radisson Hotels Int'l., Inc. v. Westin Hotel Co., 931 F. Supp. 638, 641 (D. Minn. 1996) (Kyle, J.). To satisfy that "heavy" burden, the movant must demonstrate that the relevant factors weigh "strongly" in its favor. Id.

### B. Analysis

The first question in the transfer analysis - whether this action "might have been brought" in the Southern District of New York - is not in dispute. Hence, the Court proceeds directly to the second (and final) question: do the convenience of the parties, the convenience of the witnesses, and the interests of justice, taken collectively, weigh

"heavily" in favor of transfer? The Court concludes that this question should be answered in the negative.

1. **Convenience of the parties**

The first factor, the convenience of the parties, is neutral. There cannot be any serious dispute that New York is a more convenient forum than Minnesota for Jacobowitz, a New York law firm. See Hughes v. Wheeler, 364 F.3d 920, 924-25 (8th Cir. 2004) ("There is no doubt some inconvenience in litigating a case far from home."). However, Minnesota is a more convenient forum than New York for Kroll. Section 1404(a) provides for transfer to a more convenient forum, "not to a forum likely to prove equally convenient or inconvenient." Graff v. Quest Commc'ns Corp., 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999) (Doty, J.) (citing Van Dusen v. Barrack, 376 U.S. 612, 646 (1964)). Here, a transfer to the Southern District of New York would merely transfer the inconvenience from one party to the other.

With regard to access to evidence, Jacobowitz contends that New York is the more convenient forum because the relevant events took place in New York and therefore, the important documents and witnesses are located there. (Mem. in Supp. at 15-16.) However, Kroll contends that the majority of the relevant events took place in Minnesota, rather than New York, because the extraction, imaging, and forensic data analysis was

performed in Minnesota. (Resp. to Mot. at 3-5.) Therefore, the convenience-of-parties factor is neutral.[10]

### 2. Convenience of the witnesses

Regarding the convenience of witnesses, the Court focuses on non-parties because "it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily" in a foreign forum. FUL Inc. v. Unified Sch. Dist. No. 204, 839 F. Supp. 1307, 1311 (N.D. Ill. 1993); accord Cont'l Airlines, Inc. v. Am. Airlines, Inc., 805 F. Supp. 1392, 1397 (S.D. Tex. 1992). To determine the convenience of the witnesses, the Court must examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum. Reid-Walen v. Hansen, 933 F.2d 1390, 1396 (8th Cir. 1991). Relevant considerations include the number of essential non-party witnesses, their location, and the preference of courts for live testimony as opposed to depositions. Coast-to-Coast Stores, Inc. v. Womack-Bowers, Inc., 594 F. Supp. 731, 734 (D. Minn. 1984) (MacLaughlin, J.).

Here, no material, non-party witnesses located in New York have been identified by Jacobowitz.[11] Jacobowitz asserts that its clients in the underlying litigation for which Kroll's services were sought and its clients' adversary would be witnesses to this action.

---

[10] As the relevant documents at issue are electronic, their location is of little consequence to the transfer analysis. See, e.g., Abbott v. Lockheed Martin Corp., No. 06-cv-0701, 2007 WL 844903, at *4 (S.D. Ill. Mar. 20, 2007); A Slice of Pie Prods., LLC v. Wayans Bros. Entm't, 392 F. Supp. 2d 297, 308 (D. Conn. 2005).

[11] In fact, during oral argument, counsel for Jacobowitz conceded that he did not know the names of any material, non-party witnesses located in New York, nor could he describe the testimony such unnamed witnesses would offer.

(Mem. in Supp. at 6.) However, Jacobowitz does not explain why these witnesses would be material. In fact, those witnesses with the most relevant information regarding Kroll's alleged insufficient contractual performance would be Jacobowitz employees, <u>party</u> witnesses. Similarly, Kroll has not identified any material, non-party witness located in Minnesota. Accordingly, the convenience-of-witnesses factor does not favor transfer.

### 3. Interests of justice

The interests of justice strongly disfavor transfer. When analyzing this factor, courts consider, among other things, judicial economy, the plaintiff's choice of forum, docket congestion, each party's ability to enforce a judgment, obstacles to a fair trial, conflict-of-law issues, and each court's relative familiarity with the applicable law. <u>E.g.</u>, <u>Terra Int'l</u>, 119 F.3d at 696; <u>Prod. Fabricators, Inc. v. CIT Commc'ns Fin. Corp.</u>, Civ. No. 06-537, 2006 WL 2085413, at *3 (D. Minn. July 25, 2006) (Kyle, J.). The presence of a forum selection clause is also relevant in this analysis. <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 29-30 (1988). While some of these factors (such as docket congestion, judicial economy, and conflict-of-law) are irrelevant in the present case, several militate strongly against transfer.

<u>Controlling law</u>. There does not appear to be any dispute between the parties that Minnesota law will govern this action. As the Supreme Court has recognized, "[t]here is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle . . . law foreign to itself." <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 509

(1947) (discussing forum non conveniens, superseded by statute). Thus, the applicability of Minnesota law disfavors transfer.

Plaintiff's choice of forum. The plaintiff's choice is "one factor to be considered" in determining the appropriate venue. Ahlstrom v. Clarent Corp., Civ. No. 02-780, 2002 WL 31856386, at *3 n.9 (D. Minn. Dec. 19, 2002) (Kyle, J.). The "choice of forum should be given more weight if the chosen forum is [plaintiff's] residence." Prod. Fabricators, 2006 WL 2085413, at *4. Jacobowitz is correct that a plaintiff's choice of forum is given less weight if the operative facts underlying the suit took place in a different forum. GMAC/Residential Funding Corp. v. Platinum Co. of Real Estate and Fin. Servs., Inc., Civ. No. 02-1224, 2003 WL 1572007, at *2 (D. Minn. Mar. 13, 2003) (Kyle, J.). However, in this case the operative facts took place in both New York and Minnesota. Accordingly, Plaintiff's choice of forum disfavors transfer.

Permissive venue clause. "[A] valid and applicable forum selection clause in a contract is a significant factor that figures centrally in the district court's [venue] calculus." Terra Int'l, 119 F.3d at 691 (internal quotation marks and citation omitted). In this case, the SOW contains a permissive Minnesota venue clause. There is no evidence that Jacobowitz acquiesced to this clause through Kroll's "fraud or overreaching." Schoemann, 447 F. Supp. 2d at 1006. Indeed, Jacobowitz is a sophisticated entity, fully cognizant of the import of such a clause. "[A]lthough a permissive forum [selection] clause is entitled to less weight than a mandatory one, the fact that both parties initially accepted the jurisdiction of the courts of [Minnesota] must count." Orix Credit Alliance,

Inc. v. Mid-South Materials Corp., 816 F. Supp. 230, 234 (S.D.N.Y. 1993). Accordingly, the forum selection clause also disfavors transfer.

While Jacobowitz will have to bear the cost of litigating in a foreign jurisdiction, the Court concludes that the interests-of-justice factor weighs heavily against transferring this action to the Southern District of New York.[12] In sum, having considered all the relevant factors, the Court concludes that the balance does not weigh strongly in favor of transferring this action. Accordingly, Jacobowitz's Motion to Transfer Venue will be denied.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, it is **ORDERED** that Jacobowitz's Motion to Dismiss for Lack of Personal Jurisdiction and/or Transfer (Doc. No. 6) is **DENIED**.


Dated: April 12, 2010                               s/Richard H. Kyle
                                                    RICHARD H. KYLE
                                                    United States District Judge

---

[12] Jacobowitz contends that if Kroll prevails on the merits of the underlying action "it would need to transfer its judgment to New York to be enforced," thereby placing a strain on judicial resources. (Mem. in Supp. at 17.) However, Kroll contends that enforcement of a judgment in this case would be done by a New York *state* court (Resp. to Mot. at 12), and Jacobowitz does not dispute this fact. Thus, the enforcement of a judgment in this case would be done in a different court system, even if this case were transferred to the Southern District of New York.